622 A.2d 767

Leonard Timothy GARGLIANO

v.

STATE of Maryland.

No. 1113, Sept. Term, 1992.

Court of Special Appeals of Maryland.

April 5, 1993.

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Cathleen C. Brockmeyer, Asst. Atty. Gen.,

Baltimore, and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Argued before BISHOP, ROSALYN B. BELL and HARRELL, JJ.

ROSALYN B. BELL, Judge.

This appeal involves the interpretation of Md.Code Ann. Art. 27, § 286 (1957, 1992 Repl.Vol.), of the controlled dangerous substance laws. Appellant, Leonard Timothy Gargliano, pled not guilty to distribution of cocaine. Pursuant to an agreed statement of facts, Gargliano was convicted of that charge at a bench trial in the Circuit Court for Wicomico County. He was sentenced in accordance with Art. 27, § 286(c) to an enhanced mandatory sentence of 10 years without the possibility of parole. Following post-conviction proceedings, a belated appeal was granted. Gargliano appeals on the sole ground that the trial judge improperly sentenced him as a subsequent offender under Art. 27, § 286(c) when he had been neither "charged with nor convicted of the prior offense at the time he committed the subsequent offense." We will affirm the sentence imposed by the trial judge.

## FACTS

According to the agreed statement of facts, on December 20, 1990, Trooper Niquette of the Maryland State Police was assigned to the Wicomico County Narcotics Task Force. Niquette entered an establishment known as the Royal Exchange Pub and eventually began a conversation with Gargliano. Niquette was acquainted with Gargliano because Niquette had purchased cocaine from Gargliano on two previous occasions, one in December, 1989 and one in January, 1990.

During the conversation, Niquette asked Gargliano if he could get her an "eight ball" of cocaine and, if so, at what price. Gargliano told her that an eight ball would be $250,

but it would take him half an hour to get it for her. He then stated that he could get her one gram of cocaine right away for $100. Niquette agreed and left to get the $100, stating that maybe they could arrange the sale of the eight ball for the next night.

When Niquette returned to the pub with $100 in marked currency, Gargliano told her that what she wanted was beneath a napkin in front of her. She handed the money to Gargliano and removed a plastic bag containing cocaine from under the napkin. This exchange took place at 1:15 a.m. on December 21, 1990.

A few hours after the exchange occurred, Gargliano was arrested. A search incident to his arrest yielded the $100 in marked currency given to Gargliano by Niquette.

Gargliano was eventually charged with the December 1989, January 1990, and December 1990 sales. He was convicted of the two previous sales prior to his trial and conviction on the subsequent sale. Upon his conviction of the December 1990 sale, Gargliano was sentenced to 10 years without parole to be served concurrent to the sentences he was serving on the prior convictions.

## GARGLIANO'S ARGUMENT

Gargliano contends that the trial judge erred in imposing the mandatory enhanced sentence under Art. 27, § 286(c) for subsequent offenders because he had not been charged with, or convicted of the December 1989 and January 1990 offenses at the time he committed the December 1990 offense. He argues that § 286(c) requires that the charging document in the prior offense be filed before the commission of the subsequent offense.

Article 27, § 286(c) provides, in pertinent part:

"(c)(1) A person who is convicted under subsection

(b)(1) [1] or subsection (b)(2) [2] of this section, or of conspiracy to violate subsection (b)(1) or (b)(2) of this section shall be sentenced to imprisonment for not less that 10 years if the person previously has been convicted:

"(i) Under subsection (b)(1) or subsection (b)(2) of this section; [or]

"(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section."

Gargliano cites Art. 27, § 286(d)(3), in support of his contention that a charging document must be filed prior to the commission of the subsequent offense. Section 286(d)(3), which applies to third offenses, provides:

"(3) A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding offense." [3]

---

**1.** Subsection (b)(1) provides, *inter alia,* that anyone manufacturing or distributing a schedule I or II narcotic drug is guilty of a felony and subject to imprisonment for not more than 20 years and/or a fine of not more than $25,000.

**2.** Subsection (b)(2) provides, *inter alia,* that the penalty for manufacture or distribution of certain non-narcotic schedule I or II drugs is imprisonment for not more than 20 years and/or a fine of not more than $20,000.

**3.** Article 27, § 286(d), provides, in pertinent part:
"(d)(1) Any person who is convicted under subsection (b)(1) or subsection (b)(2) of this section or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years if the person previously:
"(i) Has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of this section or § 286A of this article; and
"(ii) Has been convicted twice, where the convictions do not arise from a single incident:
"1. Under subsection (b)(1) or subsection (b)(2) of this section;
"2. Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section;
"3. Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State; or

Gargliano concedes, however, that the requirement that a charging document be filed prior to the commission of the subsequent offense is not present in subsection (c). He also concedes that, under the plain meaning of subsection (c), only a previous conviction prior to sentencing on the subsequent offense is necessary to impose a mandatory enhanced sentence. He argues, however, that the plain meaning of a statute should be considered along with the legislative intention. In his brief, Gargliano cites the following passage:

> "[R]esults that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning."

*State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976).

It is illogical, Gargliano contends, to have different requirements for a two-time offender than for a three- or four-time offender. Gargliano points out that subsections (d) and (e)[4] are clearly aimed at punishing those who fail to

---

"4. Of any combination of these offenses.

"(2) Neither the sentence required under paragraph (1) of this subsection nor any part of it may be suspended, and the person may not be eligible for parole except in accordance with Article 31B, § 11 of the Code."

**4.** Subsection (e) provides:

"(e)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be sentenced to imprisonment for the term allowed by law, but in any event, not less than 40 years if the person previously has served 3 separate terms of confinement as a result of 3 separate convictions:

"(i) Under subsection (b)(1) or subsection (b)(2) of this section;

"(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section;

"(iii) Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State; or

"(iv) Of any combination of these offenses.

reform after periods of incarceration, while subsection (c), if read literally, appears to be aimed only at punishing those who commit more than one offense. Gargliano argues that subsection (c) should be read *in para materia* with subsections (d) and (e) to permit enhanced sentences only for offenders who have failed to reform their behavior after being incarcerated.

In his brief, Gargliano cites Maryland cases interpreting other subsequent offender statutes. For example, in *Garrett v. State*, 59 Md.App. 97, 111–18, 474 A.2d 931, *cert. denied*, 300 Md. 483, 479 A.2d 372 (1984), this Court was called upon to interpret Md.Code Ann. 'Art. 27, § 643B(c) (1957, 1982 Repl.Vol., 1982 Cum.Supp.), which requires a mandatory minimum sentence for individuals convicted of violent crimes.[5] The statute itself provided that a charging document for the previous offense must be filed prior to the commission of the subsequent offense [6].

---

> "(2) Neither the sentence required under paragraph (1) of this subsection nor any part of it may be suspended, and the person may not be eligible for parole except in accordance with Article 31B, § 11 of the Code."

Subsection (e), however, does not contain a provision similar to subsection (d)(3), defining a "separate occasion."

5. Article 27, § 643B(c), in 1982, provided, in pertinent part:
> "Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years.... A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion."

*See Garrett,* 59 Md.App. at 111, 474 A.2d 931.

6. The Court in *Garrett* stated that, while the majority of states interpreted recidivist statutes, absent specific language, to require that a prior conviction precede the commission of a subsequent offense, a minority of states do not have this requirement. The Court also noted that the former version of Art. 27, § 643B(c), which did not contain the prior notice requirement, as "so worded, though couched in terms of 'convictions' rather than offenses, absent some clear expression of

The Court in *Garrett* was faced with the issue of whether the statute required the conviction in the prior offenses to precede the commission of the subsequent offenses, even though the statute only stated that the charging document must be filed. The Court stated that, in the case of penal statutes, any ambiguities must be construed in favor of the defendant. The Court held, therefore, that

> "the two convictions serving as the predicate for the enhanced sentence must precede in time the commission of the offense upon which the instant conviction is based. Deterrence, rather than retribution, is the legislative intent we shall infer; and that, as the cited authority makes clear, requires that the instant offense—the one for which the enhanced punishment is imposed—be committed after the two predicate convictions."

*Garrett*, 59 Md.App. at 118, 474 A.2d 931.

In dicta, the Court noted:

> "Most of the States have [enhanced punishment] statutes in one form or another, some providing for increased penalties upon conviction of a subsequent 'offense,' some speaking merely in terms of subsequent 'convictions,' some referring to prior convictions, some specifying a particular chronology, some not. But, as noted in Annot., *Habitual Criminal Statutes*, 24 A.L.R.2d 1247, 1248 (1952):
>
>> '[R]egardless of the difference in phraseology, the preponderance of authority supports the view that the prior convictions, in order to be available for imposition of increased punishment of one as a habitual offender, must precede the commission of the principal offense, that is, the latest prosecution in point of time. In this connection, it has been brought out in numerous cases that, although differing somewhat in language, the same principle is inherent in a habitual criminal statute,

---

legislative intent, the statute could as easily have been construed in accordance with either the majority or minority rule." *Garrett*, 59 Md.App. at 115, 474 A.2d 931.

namely, that the legislature in enacting such a statute intended it to serve as a warning to first offenders and to afford them an opportunity to reform, and that the reason for the infliction of severer punishment for a repetition of offenses is not so much that defendant has sinned more than once as that he is deemed incorrigible when he persists in violations of the law after conviction of previous infractions.'" (Emphasis omitted.)

*Garrett,* 59 Md.App. at 112–13, 474 A.2d 931.

Gargliano also cites *Montone v. State,* 308 Md. 599, 614, 521 A.2d 720 (1987), for the proposition that Md.Code Ann. Art. 27, § 643B(b) (1957, 1982 Repl.Vol., 1986 Cum.Supp.),[7] was intended to punish offenders who do not reform their behavior after prior convictions and punishment.[8] Although Gargliano concedes that both *Garrett* and *Montone* involve a different statute, he argues that they are persuasive authority for adopting a similar construction of § 286(c). According to Gargliano, the word "conviction" in § 286(c) requires not only that a charging document be filed prior to the commission of a subsequent offense, but also requires a conviction on the prior offense to impose a mandatory enhanced sentence. Therefore, Gargliano argues that the prior conviction requirement of subsection (c) is actually more stringent than the requirement in subsection (d)(3), which requires that a charging document be filed prior to the commission of the subsequent offense.

---

**7.** Section 643B(b) provides for a mandatory sentence of life without parole if a defendant has served three separate terms of confinement for the commission of three separate crimes of violence upon the defendant's conviction of a fourth crime of violence.

**8.** In a footnote, the Court stated that "[f]or illustrations of Maryland's repeat offender statutes intended as punishment vehicles only, *see* ... Md.Code Ann. Art. 27, § 286 (1957, 1982 Repl.Vol.)." *Montone,* 308 Md. at 612 n. 11, 521 A.2d 720. In a concurring opinion, Chief Judge Murphy stated that protecting the public and deterring future crimes with an extended sentence for repeat offenders are also purposes of the enhanced sentence statutes. *Montone,* 308 Md. at 617, 521 A.2d 720.

## THE STATE'S ARGUMENT

The State argues that the plain meaning of the statute permits the imposition of the enhanced sentence upon Gargliano. The State contends that the statute requires only a previous conviction of a drug offense prior to imposing sentence on a subsequent offense, and that requirement was met in the instant case. The State urges this Court to infer that, because the Legislature added the requirement that a charging document be filed prior to the commission of a subsequent offense to subsection (d) and not to subsection (c), the Legislature did not intend to punish two-time offenders who fail to reform, but only serious offenders who commit more than one drug-related offense.

The State also argues that it is clear from the purpose of the controlled dangerous substance laws that the Legislature intended to punish both the defendant who cannot be rehabilitated and the defendant who commits more than one offense. Maryland Code Ann.Art. 27, § 276(a) and (b) (1957, 1992 Repl.Vol.), provides, in pertinent part:

"The General Assembly ... finds and declares that the illegal ... distribution ... of controlled dangerous substances ha[s] a substantial and detrimental effect on the health and general welfare of the people of the State of Maryland. It is the purpose of this subheading to establish a uniform law controlling the ... distribution ... of controlled dangerous substances....

"(b) The provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose...."

The State urges that a liberal interpretation would lead to the conclusion that the Legislature intended § 286(c) to punish offenders who commit more than one offense.

## ANALYSIS

We begin our analysis with the concession from both parties that the statute plainly requires only that a conviction of a prior offense precede the imposition of a sentence

for the subsequent offense. It is clear that this simple requirement was complied with in the instant case—Gargliano was convicted of the prior offenses before he was sentenced on the subsequent offense.

Gargliano, in his brief, states that the Legislature had only one intent in passing the controlled dangerous substance laws—to punish recidivist behavior—thus, the sentence must be reversed. The State, however, argues that the Legislature, by requiring that previous convictions occur prior to the commission of a third or fourth offense and not adding the same language to subsection (c), intended to punish not only those convicted after repeated incarcerations, but also the multiple offender, regardless of whether he or she has served time. Thus, the sentence may stand. We agree with the State's position.

The cases cited by Gargliano are persuasive only and are not binding upon this Court. As stated earlier, the statutes involved in *Garrett, supra,* and *Montone, supra,* specifically required a charging document to be filed, while § 286(c) has no such requirement.[9] Moreover, the Court in *Garrett* found the statute ambiguous and therefore construed the statute in favor of the defendant. *Garrett,* 59 Md, App. at 117–18, 474 A.2d 931. No such ambiguity exists in the instant case.

The legislative history of § 286 also supports the State's position. Subsections (c), (d) and (e) were all added to § 286 in July, 1988. 1988 Md.Laws Ch. 439. As stated above, subsections (d) and (e) require the defendant to have been incarcerated for a previous drug-related conviction, while subsection (c) did not. If the Legislature had intended to

---

**9.** In *State v. Bailey,* 319 Md. 392, 407, 572 A.2d 544, *cert. denied,* 498 U.S. 841, 111 S.Ct. 118, 112 L.Ed.2d 87 (1990), quoting an unreported opinion of this Court, the Court of Appeals stated, in pertinent part: " 'To convict a narcotics offender in Maryland of being a repeat offender under the provisions of Md.Ann. Code Art. 27, § 286(c)(i) or § 293, it is not required to show a prior term of confinement or even the imposition of a sentence. The prior conviction standing alone is sufficient.' "

require in subsection (c) that a defendant serve time for the first offense before committing a subsequent offense, it could have done so because such requirements were included in subsections (d) and (e).

In addition, a 1988 Bill Analysis by the Senate Judicial Proceedings Committee of subsections (c), (d) and (e), summarized these provisions as follows:

"1.  Second conviction—imprisonment for not less than 10 years.

"2.  Third conviction—imprisonment for not less than 25 years, provided that the person has served at least one term of confinement for at least 180 days for violating either Section 286 or Section 286A....

"3.  Fourth conviction—imprisonment for not less than 40 years, provided the person has served 3 separate terms of confinement as a result of 3 separate convictions for violations involving a narcotic drug or PCP."

It is clear from the summary that the Legislature was well aware of the absence of any qualifications for a second offense.  Furthermore, the purpose of the 1988 Md.Laws Ch. 439 was to require

"certain mandatory minimum penalties for subsequent convictions of violations relating to controlled dangerous substances under certain circumstances;  specifying that, for the purpose of certain subsequent offender penalties, certain offenses are prior offenses;  prohibiting the suspension of certain penalties;  providing for the construction of this Act;  and generally relating to mandatory minimum penalties for subsequent convictions concerning specific controlled dangerous substances."  (Underscoring omitted.)

The statement that "for the purpose of *certain* subsequent offender penalties, certain offenses are prior offenses" indicates that the Legislature intended to make a distinction between second offenses and third and fourth offenses. (Emphasis added.)  This language implies that for certain subsequent offender penalties, *i.e.*, second offenses, there is

no specification concerning what constitutes a prior offense. The purpose of the 1988 Act, therefore, supports the State's interpretation of subsection (c).[10]

Language concerning enhanced penalties for multiple offenses can be found in the controlled dangerous substance statutes as far back as 1935. For example, Md.Code Ann. Art. 27, § 285V (1935 Supp.), provided:

"Any person violating any provision of this sub-title shall, upon conviction, be punished for the first offense by a fine not exceeding one thousand dollars ($1,000.00) or by imprisonment for not exceeding three years, or both; and for any subsequent offense by a fine not exceeding three thousand dollars ($3,000.00) or by imprisonment for not exceeding five years, or both." [11]

In 1951, § 285V was recodified as amended in Md.Code Ann. Art. 27, § 369 (1951), which provided, in pertinent part:

"Whoever violates any provision of this sub-title shall upon conviction be fined not more than One Thousand Dollars ($1,000.00) and be imprisoned not less than two or more than five years. For a second offense, or if, in the case of a first conviction of violation of any provision of this sub-title, the offender *shall previously have been*

---

**10.** In *Collins v. State,* 89 Md.App. 273, 291–94, 598 A.2d 8 (1991), we noted other distinctions between subsection (c) and subsections (d) and (e)—only second offenders are eligible for drug treatment in lieu of a mandatory sentence. This distinction might explain why the Legislature sought to impose more stringent requirements for third and fourth offenses and not for second offenses. Penalties for third and fourth convictions are much harsher than for a second offense, and three- and four-time offenders are not eligible for drug treatment in lieu of a mandatory sentence. Since those second offenders who are deemed fit for rehabilitation may be given drug treatment in lieu of a mandatory sentence, the more stringent standard for second offenders would serve no purpose.

**11.** Maryland Code Ann. Art. 27, §§ 283–285 (1924), did not contain enhanced penalties for subsequent offenses under the controlled dangerous substances laws, but provided for the same punishment for each offense. § 283. Maryland Code Ann. Art. 27, § 285V (1935 Supp.), therefore contained the first mention of enhanced sentences for repeat offenders of the controlled dangerous substance laws.

*convicted of* any violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs or marihuana, the offender shall be fined not more than Two Thousand Dollars ($2,000.00) and be imprisoned not less than five or more than ten years. *For a third or subsequent offense, or if the offender shall previously have been convicted two or more times in the aggregate* ... the offender shall be fined not more than Three Thousand Dollars ($3,000.00) and be imprisoned not less than ten or more than twenty years...." (Emphasis added.)

In 1957, § 369 was recodified in § 300 without substantial change. Effective July 1, 1982, the enhanced mandatory penalties for controlled dangerous substances were added to § 286:

"Any person who has previously been convicted under this paragraph shall be sentenced to imprisonment for not less than ten years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with Article 31B, § 11."

Md.Code Ann.Art. 27, § 286(b) (1957, 1982 Repl.Vol., 1982 Cum.Supp.). This addition was for

"the purpose of imposing mandatory sentences for persons previously convicted of certain offenses relating to the manufacture or distribution of controlled dangerous substances; and altering the penalties for certain offenses relating to the manufacture or distribution of certain controlled dangerous substances." (Underscoring omitted.)

1982 Md.Laws Ch. 470. In 1988, subsections (c), (d) and (e) were added to § 286 as discussed above.

Maryland Code Ann.Art. 27, § 293 (1957, 1992 Repl.Vol.), also contains enhanced penalties for controlled dangerous substances, and is entitled "Second or subsequent offenses." Section 293 provides, in pertinent part:

"(a) Any person convicted of any offense under this subheading is, if the offense is a second or subsequent

offense, punishable by a term of imprisonment twice that otherwise authorized, by twice the fine otherwise authorized, or by both.

"(b) For the purposes of this section, *an offense shall be considered a second or subsequent offense, if, prior to the conviction of the offense, the offender has. at any time been convicted of any offense* or offenses under this subheading or under any prior law of this State or any law of the United States or of any other state relating to the other controlled dangerous substances as defined in this subheading." [12]   (Emphasis added.)

None of these statutes requires that the prior conviction occur before the subsequent offense is committed.  In fact, the first time this requirement appears in the controlled dangerous substance statutes is in 1988 in § 286(d) and (e) relating to third and fourth offenses.  We hold that the Legislature intended to make a distinction between second offenses and third and fourth offenses.  It is apparent from this history that the Legislature intended to punish multiple offenders in § 286(c) and recidivist behavior in § 286(d) and (e).  Gargliano's sentence, therefore, is legal.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

**12.** The penalties in § 293 differ from those in § 286 in that persons incarcerated pursuant to § 293 are eligible for parole, while persons incarcerated pursuant to § 286 are not eligible for parole unless they are serving the sentence in Patuxent Institution.