*Dallas Fenton v. Secretary, Department of Public Safety and Correctional Services*, No. 322, September Term, 2023. Opinion by Meredith, J. Filed November 1, 2024.

**CRIMINAL LAW – SENTENCES – DIMINUTION CREDITS.**

Section 3-702(c) of the Correctional Services Article ("CS") of the Maryland Code (1999, 2008 Repl. Vol., 2016 Supp.) precludes an inmate who is serving a sentence for a conviction of a third-degree sexual offense that was committed against a child under the age of sixteen from earning diminution credits "if the inmate was previously convicted" of that same offense against a child under the age of sixteen. By interpreting the phrase "previously convicted" in the same manner in which the Supreme Court has construed that phrase in interpreting a different penalty enhancement statute, the Appellate Court of Maryland concluded that diminution credits are to be withheld pursuant to CS § 3-702(c) only where the conviction for a "previous" third-degree sexual offense precedes the *commission* of the repeated third-degree sexual offense.

Circuit Court for Washington County
Case No.: C-21-CV-21-000372

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0322

September Term, 2023

_____

DALLAS FENTON

v.

SECRETARY, DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL SERVICES

_____

    Ripken,
    Tang,
    Meredith, Timothy E.
       (Senior Judge, Specially Assigned),

           JJ.

_____

Opinion by Meredith, J.

_____

Filed: November 1, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In 2017, at the conclusion of a jury trial, Dallas Fenton, appellant/cross-appellee (hereinafter "Fenton"), was convicted of committing several sexual offenses upon a fourteen-year-old girl on four occasions that occurred during April and May of 2016. For one of the counts charging a third-degree sexual offense, the trial court imposed a sentence of ten years' imprisonment. For another count charging a third-degree sexual offense on a separate date, the trial court imposed a consecutive ten-year sentence. While Fenton was serving the first of those sentences, he was informed by correctional officials that he could not earn or receive any diminution of confinement credits relative to the consecutive ten-year sentence because of a statute that precludes "[a]n inmate" from receiving diminution credits "if the inmate was previously convicted" of a third-degree sexual offense "involving a victim who is a child under the age of 16 years[.]" Section 3-702(c) of the Correctional Services Article ("CS") of the Maryland Code (1999, 2008 Repl. Vol., 2016 Supp.). Fenton complained to the Inmate Grievance Office that the CS § 3-702(c) exclusion from receiving diminution credits did not apply to him because the first time he had ever been convicted of a third-degree sexual offense was at the conclusion of the trial in this case. The Inmate Grievance Office rejected his argument.

Fenton sought judicial review in the Circuit Court for Washington County, and he received partial relief. The circuit court ruled that the "good conduct" credits that are customarily deemed earned and awarded in advance at the outset of an inmate's term of confinement should be awarded to Fenton at the commencement of his consecutive ten-year sentence, but he would be precluded from earning any further diminution credits while he served that consecutive ten-year term. Both Fenton and the Secretary of the Department

of Public Safety and Correctional Services, appellee/cross-appellant (hereinafter "the Secretary"), filed applications for leave to appeal in this Court. We granted both applications and transferred the case to our regular docket.

Having considered the arguments of both parties as to whether CS § 3-702(c) precludes an inmate from receiving diminution credits under the circumstances presented by Fenton's case, we conclude that the statutory construction of the phrase "previously convicted" that the Maryland Supreme Court adopted in *Gargliano v. State*, 334 Md. 428 (1994), controls the outcome of this case. In *Gargliano*, the Supreme Court held that an enhanced penalty for a defendant who has been "previously" convicted "may be imposed only where the conviction for a prior offense precedes the *commission* of the [repeated] offense[.]" *Id*. at 431. Because Fenton had not been convicted of a third-degree sexual offense at the time of his commission of the offenses in April and May of 2016, we agree with Fenton's argument that CS § 3-702(c) does not preclude him from earning diminution credits with respect to his consecutive ten-year sentence.

## BACKGROUND

### *The Offenses*

In a previous unreported opinion of this Court in which we affirmed Fenton's convictions, *Fenton v. State*, No. 1111, Sept. Term, 2017 (filed May 30, 2018) (hereinafter "*Fenton I*"), we described the conduct that led to Fenton's convictions of third-degree sexual offenses as follows:

> The female victim lived with her mother and two siblings in Salisbury. She celebrated her fourteenth birthday on March 31, 2016. Shortly thereafter she began communicating with appellant—then fifty-seven years of age—on

2

"Whisper," a smartphone application which allows users to communicate anonymously by exchanging text messages and/or digital images. During their private dialogues on Whisper, appellant and the victim exchanged personal information. She informed appellant that she was fourteen years old, while appellant identified himself as a forty-seven-year-old husband and father of two. Eventually their communications became sexual in nature.

\* \* \*

On Friday and Sunday evenings of alternating weekends the victim was alone in her home for two to three hours, beginning around 5:30 or 6:00 p.m. while her mother made roundtrips to Easton, delivering and picking up the elder sibling to and from child visitation. Appellant's first three in-person encounters with the victim took place in her home while her mother made one of these trips.

Their first such encounter took place on either a Friday or a Sunday evening. Appellant asked her to remove her jeans. After she did so, appellant performed cunnilingus on the victim, touched her breasts, and digitally penetrated her vagina. The second such meeting likewise took place on a Friday or a Sunday evening. Appellant performed cunnilingus on her and touched her "the same as the first time." This encounter differed from the first, however, in that appellant engaged in fellatio with the victim. During the third encounter appellant again engaged in fellatio and cunnilingus with her.

The final in-person encounter occurred on Friday, May 20, 2016, the day on which the victim attended her class's eighth grade graduation prom. Shortly after 5:00 p.m., appellant, driving a pickup truck, picked up the victim from outside her house and drove to "one of the back roads down by [her] school." . . . After appellant parked they alighted the vehicle. Appellant engaged in sexual intercourse with the victim while she sat on the tailgate of the truck. Thereafter, he dropped her off at her school.

*Fenton I*, slip op. at 2-4.[1]

---

[1] In our unreported opinion, we set forth the following statutory definition of third-degree sexual offense as follows, *Fenton I*, slip op. at 1 n.1:

Maryland Code (2002, 2012 Repl. Vol.), § 3-307(a) of the Criminal Law Article (CL) provides that a defendant is guilty of third-degree sexual offense if, *inter alia*, that defendant:

(continued…)

*Trial and Sentencing*

On June 27, 2017, at the conclusion of a trial in the Circuit Court for Wicomico County, a jury found Fenton guilty of eight counts of third-degree sexual offense (counts 1 through 8), one count of sexual solicitation of a minor (count 9), and one count of indecent exposure (count 11).

On August 9, 2017, the court sentenced Fenton to ten years' imprisonment for one count of third-degree sexual offense (count 1), ten consecutive years for another count of

---

"(4) engage[s] in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old; or

"(5) engage[s] in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old."

CL § 3-301(d)(1) defines a "sexual act" as:

"[A]ny of the following acts, regardless of whether semen is emitted:
"(i) analingus;
"(ii) cunnilingus;
"(iii) fellatio;
"(iv) anal intercourse, including penetration, however slight, of the anus; or
"(v) an act:
"1. in which an object or part of an individual's body penetrates, however slightly, into another individual's genital opening or anus; and
"2. that can reasonably be construed to be for sexual arousal or gratification, or for the abuse of either party."

CL § 3-301(g)(1) defines "vaginal intercourse" as "genital copulation, whether or not semen is emitted." CL § 3-301(g)(2) goes on to explain that "'[v]aginal intercourse' includes penetration, however slight, of the vagina."

4

third-degree sexual offense (count 8), and then three consecutive years for indecent exposure (count 11), for a total of twenty-three years' imprisonment.[2]

### *Diminution of Confinement Credits Generally*

In Maryland, inmates are generally entitled to earn "diminution of confinement" credits which reduce the length of their period of confinement by one day for each credit. Upon earning a sufficient number of diminution of confinement credits, the inmate is released on mandatory supervision, which is akin to parole. CS § 7-501(a). *See also Sec'y of Pub. Safety & Corr. Servs. v. Hutchinson*, 359 Md. 320, 325-26 (2000); *Sec'y, Dep't of Pub. Safety & Corr. Servs. v. Henderson*, 351 Md. 438, 441 (1998). "Mandatory supervision" is defined as "a conditional release from incarceration granted to an inmate[.]" Code of Maryland Regulations ("COMAR") 12.02.06.01B(10).

Diminution of confinement credits can be earned in various ways, as outlined in the enabling statutes and regulations. *See* CS § 3-701, *et seq*., and COMAR 12.02.06.04. For example, diminution credits can typically be earned at a rate of five or ten days per month for "work tasks" pursuant to CS § 3-705, for participating in "education" pursuant to CS § 3-706, and for "special projects" pursuant to CS § 3-707. *See also Moats v. Scott*, 358 Md. 593, 597 (2000). In addition, sixty days of credit can be earned for successfully obtaining certain "[a]cademic certificates, diplomas, or degrees" pursuant to CS § 3-706.1.

Unlike all other varieties of diminution of confinement credits (which are awarded

---

[2] The trial court also imposed, but fully suspended, consecutive five-year sentences for three other counts of third-degree sexual offense (counts 3, 5, and 9). The court merged the remaining counts for sentencing.

to the inmate at the time they have been earned), "good-conduct" diminution of confinement credits are earned and credited to the inmate in advance at the commencement of the sentence being served. Good-conduct credits may be deducted in advance from the inmate's term of confinement at a rate of either five or ten days per month, depending on whether the inmate's term of confinement contains a sentence for certain violent offenses or drug-related crimes. CS § 3-704. But good-conduct diminution of confinement credits (and special project diminution of confinement credits) may be revoked if an inmate is found to be in violation of the Division of Correction's disciplinary rules. CS § 3-709.

An inmate is limited to earning a maximum of twenty or thirty credits per month depending on whether the inmate's term of confinement contains a sentence for certain sexual offenses, violent offenses, or drug-related crimes. CS § 3-708.

*Certain Inmates not Entitled to Diminution of Confinement Credits*

Pursuant to CS § 3-702(b) and (c), inmates convicted of certain sexual offenses committed against children under the age of sixteen may be precluded from receiving diminution of confinement credits. At issue in this appeal, CS § 3-702(c) prohibits an inmate serving a sentence for conviction of a third-degree sexual offense committed against a child under the age of sixteen from earning diminution credits "if the inmate was previously convicted" of that same offense against a child under the age of sixteen. At the time Fenton committed the third-degree sexual offenses that are the subject of this appeal, CS § 3-702(c) read as follows:

> An inmate who is serving a sentence for a violation of § 3-307 of the Criminal Law Article involving a victim who is a child under the age of 16 years is not entitled to a diminution of the inmate's term of confinement as provided

6

under this subtitle, **if the inmate was previously convicted** of a violation of § 3-307 of the Criminal Law Article involving a victim who is a child under the age of 16 years.

CS § 3-702(c) (emphasis added).[3]

*The Inmate Grievance Office's Ruling*

In a letter to Fenton dated March 7, 2019, the Division of Correction explained that it had determined that Fenton was not entitled to earn any diminution of confinement credits against his consecutive ten-year sentence for the third-degree sexual offense conviction on count 8 because CS § 3-702(c) prohibited him from earning such credits for that sentence after having been "previously convicted" on count 1 (even though both of those convictions were imposed after a single trial and during a single sentencing proceeding).

On March 24, 2021, Fenton filed a grievance with the Inmate Grievance Office alleging that the Division of Correction had incorrectly refused to award him any diminution of confinement credits relative to his consecutive ten-year sentence on count 8.

---

[3] We recognize that the General Assembly amended CS § 3-702 effective October 1, 2024, but any amendments to the law do not affect our consideration of whether the Secretary correctly applied the law as it existed at the time Fenton was sentenced for crimes committed in 2016. For completeness, we note that, as of October 1, 2024, CS § 3-702(c) states:

> (c) An incarcerated individual who is serving a sentence for a violation of § 3-307 of the Criminal Law Article involving a victim who is a child under the age of 16 years is not entitled to a diminution of the incarcerated individual's term of confinement as provided under this subtitle, if the incarcerated individual was previously convicted of a violation of § 3-307 of the Criminal Law Article involving a victim who is a child under the age of 16 years.

7

The Inmate Grievance Office dismissed Fenton's grievance, finding that, under CS § 3-702(c), he was not entitled to earn diminution of confinement credits on his consecutive sentence for the third-degree sexual offense in count 8 because he had been "previously convicted" in count 1 of this case of that same offense. The Inmate Grievance Office explained:

> [CS] § 3-702(c) prohibits the application of diminution credits toward an inmate's term of confinement if he was previously convicted of a violation of § 3-307 of the Criminal Law Article and the victim of the crime is under the age of 16. **Resolution of this issue turns on the meaning of "previously convicted."** In your case, you were convicted of a Third[-]Degree Sexual Offense with a victim under the age of 16 in Count 1 and subsequently convicted of that offense again with a victim under the age of 16 in Count 8. **The Warden, the Commissioner, and the Director of the Commitment Unit of the Division of Correction all agree that the conviction in Count 1 is a previous conviction for purposes of § 3-702(c) and operates to prevent the accumulation of diminution credit on your conviction in Count 8.**
>
> It is your belief that "previously convicted" does not apply when the convictions arise from a single sentencing event, as opposed to the situation where a person has a prior conviction arising out of a previous incident. While **the language of § 3-702(c) does not include a definition of what is meant by "previously convicted,"** the Division of Correction has consistently interpreted it as applying to the factual circumstances of your case, and therefore, it is entitled to be given weight when deciding who is and who is not entitled to diminution credits. Accordingly, your grievance is dismissed pursuant to § 10-207 of the Correctional Services Article. You may appeal this decision to the appropriate Circuit Court within 30 days from the date of this letter.

(Emphasis added.)

Fenton sought judicial review of that decision in the Circuit Court for Washington County. The circuit court agreed with the Inmate Grievance Office's assessment that, on the date Fenton begins serving his sentence on count 8, he will have been "previously

8

convicted" of a third-degree sexual offense against a child under the age of sixteen within the meaning of CS § 3-702(c). As a result, the circuit court determined that Fenton would not be entitled to earn non-good-conduct diminution of confinement credits once he begins serving that sentence.[4] But, in divergence from the Inmate Grievance Office's decision, the circuit court determined that Fenton was entitled to earn good-conduct diminution credits against the sentence on count 8 because, the court reasoned, good-conduct credits are earned and credited to the inmate in advance, and therefore, the prohibition in CS § 3-702(c) on earning diminution of confinement credits when an inmate "is serving" the consecutive sentence did not apply to those credits.[5]

## QUESTION PRESENTED

The question presented by the appellant, which we have revised only slightly, asks whether Fenton "was previously convicted" as that phrase is used in CS § 3-702(c) in light of the fact that his multiple convictions for third-degree sexual offense were imposed during a single criminal proceeding, including the conviction for which the Secretary denied him diminution of confinement credits. That is, under the circumstances of this case, was Fenton "previously convicted" within the meaning of CS § 3-702(c) at the time he was sentenced on count 8 such that he was precluded from receiving some or all diminution of confinement credits relative to the consecutive ten-year sentence?

---

[4] Fenton appeals this ruling of the circuit court.

[5] The Secretary cross-appeals this ruling of the circuit court.

9

We answer that question in the negative and conclude that Fenton was not precluded from earning and receiving diminution credits while serving the consecutive ten-year sentence imposed by the trial court in this case on count 8.

## DISCUSSION

*Standard of Review*

In *Demby v. Secretary, Department of Public Safety & Correctional Services*, 163 Md. App. 47 (2005), *aff'd*, 390 Md. 580 (2006), this Court described the standard for appellate review of a circuit court's judicial review of a ruling made by an inmate grievance office as follows:

> In appeals from inmate grievance proceedings, "an appellate court reviews the agency decision under the same statutory standards as the circuit court[; thus,] we reevaluate the decision of the agency, not the lower court." *Watkins v. Sec'y, Dep't of Pub. Safety & Corr. Serv's*, 377 Md. 34, 45-46 (2003). We give "'appropriate deference to the decisions of prison administrators and appropriate recognition to the peculiar and restrictive circumstances of penal confinement.'" *Campbell v. Cushwa*, 133 Md. App. 519, 538 (2000) (citation omitted). This deference does not extend to cases where the agency has made an error of law, however.
>
> > [W]e "may always determine whether the administrative agency made an error of law." . . . Typically, such a determination requires considering "(1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." . . . Moreover, in cases that involve determining whether a constitutional right has been infringed, we make an independent constitutional appraisal. . . .
>
> [*Watkins*, 377 Md. at 46] (citations omitted).

*Demby*, 163 Md. App. at 59-60.

*Previously Convicted*

As the Inmate Grievance Office noted, this case turns on the meaning of the phrase "if the inmate was previously convicted," which was not defined by the Legislature relative to CS § 3-702(c). In Fenton's view, the statute falls in the category of sentencing enhancement provisions, and there is substantial caselaw holding that such provisions apply only to a repeat offense that is committed after the offender has previously been sentenced for a prior violation of the specified criminal offense. But the Secretary argues that the disqualification from receiving diminution credits applies to any repeat offender's second sentence regardless of what may have transpired between the time of the first and second sentence.

Each party argues that the text of CS § 3-702(c) is clear and unambiguous, and they contend that the plain language supports their respective positions. But we agree with the Supreme Court of Maryland's analysis in *Gargliano*, wherein that Court found ambiguity in a statute—Maryland Code (1957), Article 27, § 286—that mandated an enhanced sentence "if the person previously has been convicted" of a similar offense.[6]

In that case, Gargliano had made three illegal sales of cocaine to an undercover police officer. He was arrested and charged with three violations of the statute prohibiting the distribution of cocaine: one sale in December 1989, a second sale in January 1990, and

---

[6] Article 27, § 286(c)—which has been recodified into Criminal Law Article § 5-608—mandated enhanced penalties for certain subsequent drug offenses, including Gargliano's sales of cocaine, "if the person previously has been convicted" of certain drug offenses.

11

a third sale in December 1990. *Gargliano*, 334 Md. at 431. At a trial that occurred on April 4, 1991, Gargliano was convicted of the counts charging the first two sales. He was then convicted on September 27, 1991, pursuant to a conditional guilty plea, on the count charging the third sale. *Id.* at 432. When Gargliano was sentenced on the count charging the third sale, the court imposed the enhanced sentence that was mandated for a defendant who "previously has been convicted" of that drug offense. *Id.* at 432-33.

This Court affirmed the imposition of the enhanced sentence, accepting the State's assertion that it was sufficient that a prior sentence had been imposed before the trial on the third count without regard to the dates of commission of the various offenses. *See Gargliano v. State*, 95 Md. App. 593, 602 (1993). The Supreme Court of Maryland, however, disagreed and held that, under the sequence of events in Gargliano's case, he was not subject to the enhanced sentence that applied to a person who *previously had been convicted* of the offense. *Gargliano*, 334 Md. at 445.

The Supreme Court observed that the enhancing statute (Art. 27, § 286(c)) "does not identify whether the prior conviction must be previous to the principal offense or merely previous to the sentencing for the enhanced penalty to apply." *Id.* at 434-35. In seeking to ascertain and effectuate the legislative intent of Article 27, § 286(c), the Court began its analysis by examining the words of the statute, but ultimately concluded that the statute's reference to a person who "previously has been convicted" was ambiguous. In a unanimous opinion authored by Judge Irma S. Raker, the Court explained:

> The statute is clear that a "previous conviction" subjects a defendant to the enhanced penalty. Section 286(c) is unclear, however, as to when the conviction for the earlier offense must have been entered for it to be

12

considered a "previous" conviction such that the enhanced penalty applies.

> Gargliano contends that the word "previously" in § 286(c) means "prior to the commission of the principal offense" while the State argues that "previously" means "prior to sentencing on the principal offense." In support of his contention that § 286(c) should be interpreted such that a defendant "previously has been convicted" only if the defendant was convicted of the prior offense before the principal offense was committed, Gargliano asserts that enhanced penalties are typically applied only to defendants who have been convicted of an offense, have had the opportunity to reform their behavior, and thereafter commit additional criminal offenses. The interpretation of § 286(c) proffered by the State, and which the intermediate appellate court below adopted, is that a defendant "previously has been convicted" when a conviction exists at the time of sentencing on the principal offense. If the statute is interpreted in this manner, the sequence in which the enhancing act and the principal offense occur is irrelevant. The dispute over the proper interpretation of "previously has been convicted" ultimately resolves itself into a dispute over whether the statute was intended to apply only to defendants who fail to reform their behavior after a prior conviction or whether it was intended to apply to all defendants who amass multiple convictions.

*Id*. at 438.

The *Gargliano* Court found the phrase "previously has been convicted" to be ambiguous, noting that "both interpretations of the phrase that have been proffered [by the parties] are reasonable and, consequently, that § 286(c) is ambiguous." *Id*. at 438-39. After reviewing the legislative history that was available, the Court observed:

> The clear import of the language used throughout § 286 is that the Legislature sought to impose more stringent penalties on certain offenders who repeatedly persist in a pattern of criminal conduct. From the sparse legislative history available, however, we cannot conclusively determine whether the General Assembly sought to subject all individuals who commit multiple offenses to the enhanced penalty or whether it sought to impose the statutory penalty only upon the narrower class of persons who have not responded to the restraining influence of conviction and punishment and thereafter continue to commit criminal acts.

*Id*. at 442.

The Court noted that it had previously reviewed a number of enhanced penalty statutes, many of which were ambiguous in some regard. *Id*. With respect to those previous cases, the Court stated: "When called upon to construe similar enhanced penalty statutes, we have repeatedly stated that the general purpose of such statutes is to deter the future commission of criminal offenses by persons who have previously been convicted and subject to the threat of punishment." *Id*. at 442-43. After reviewing several of those prior cases in which it was called upon to construe enhanced penalty statutes, the Court held that Gargliano's conviction for the third of his three drug offenses was not one that had been entered against a person who "previously has been convicted," notwithstanding that he had been found guilty of two violations of the statute a few months before being sentenced for the third offense. The Court explained:

> Absent a clear statement of legislative intent to the contrary, we adhere to our previous determinations of legislative intent with regard to similar statutes—that the Legislature intended to "protect the public . . . and to deter repeat offenders from perpetrating other criminal acts . . . under the threat of an extended period of confinement"—and find that the Legislature had the same intent in enacting § 286(c). *Hawkins v. State*, 302 Md. [143, 148 (1985)]. An enhanced penalty statute will best deter future criminal conduct when the defendant is made aware that the subsequent commission of criminal acts will be more harshly punished. **Where, as here, the defendant has not been convicted of an earlier offense, and thereby warned about the enhanced consequences of future criminal conduct, prior to the commission of the principal offense, the imposition of an enhanced penalty is not warranted.** We therefore hold that § 286(c) is applicable only if the defendant has been convicted of an earlier offense prior to the commission of the principal offense.

*Id*. at 444-45 (emphasis added).

The Court asserted that its interpretation—that, in order for the enhanced penalty to apply, "the prior conviction must precede the *commission* of the principal offense"—was

14

"in accord with the clear majority rule." *Id*. at 445-46 (emphasis in original). The Court

recognized that other courts had adopted the construction urged by the State, but asserted

that its disposition in *Gargliano* was consistent with the "better reasoned cases[,]" stating:

> Although we recognize that courts in other jurisdictions have construed similar statutes in the manner advocated by the State and held that an enhanced penalty may be imposed when the prior conviction occurs after the commission of the principal offense, we find that **our construction of the statute—that the previous conviction relied upon for enhancement purposes must precede the commission of the principal offense—is in accord with the clear majority rule as well as the better reasoned cases and is most consistent with our prior interpretations of Maryland enhanced penalty statutes similar to § 286(c).**

*Id*. at 447-48 (emphasis added; footnote omitted).

The *Gargliano* Court concluded by observing that any doubt as to whether the

Legislature intended to impose the harsher penalty must be resolved in favor of the

defendant:

> In the area of statutory enhanced penalties, however, **when we are uncertain whether the Legislature intended to authorize the imposition of an enhanced penalty in a particular situation, the presumption must be that the Legislature did not intend to do so**. Accordingly, we hold that the enhanced penalty mandated by § 286(c) may be imposed only where the principal offense is committed after the defendant has been convicted of an earlier offense. Gargliano's sentence for the principal offense, distribution of cocaine, could not be enhanced under § 286(c) by his prior convictions for distribution of cocaine because those convictions were entered after the commission of the principal offense.

*Id*. at 449 (emphasis added). *See also Stouffer v. Holbrook*, 417 Md. 165, 183 (2010)

("[T]he Legislature . . . injected enough uncertainty into the statutory scheme, with respect

to inmates in Holbrook's situation, to implicate the rule of lenity.").

15

Even though the specific words the General Assembly used in CS § 3-702(c)—i.e., "if the inmate was previously convicted"—are slightly different from the phrase analyzed by the Supreme Court in *Gargliano*, i.e., "if the person previously has been convicted," we perceive no meaningful distinction; both of the statutes establish a condition that will result in an inmate spending more time in prison than some other offender to whom the enhancement condition does not apply. In our view, the interpretation set forth in *Gargliano* should apply equally to both statutes.

Despite the similarity between the enhanced penalty statutes considered in Gargliano's case and Fenton's case, the Secretary contends in its brief:

> The criminal sentencing case on which Mr. Fenton's contrary argument rests, *Gargliano v. State*, 334 Md. 428 (1994), is inapposite because it interpreted an entirely different statute that required increased penalties for individuals convicted of certain drug-related offenses. The statute at issue in *Gargliano* provided that a defendant who "is convicted under" a certain section of the statute "shall be sentenced to imprisonment for not less than ten years if the person previously has been convicted" of offenses enumerated under the statute. *Id*. (citing former Md. Ann. Code art. 27, § 286 (1994) (now Crim. Law § 5-608(b)).

> * * *

> Section 3-702(c) uses different language—"is serving a sentence for"—than the drug distribution statute at issue in *Gargliano*—"is convicted"—to describe exactly when an inmate will be disqualified from earning diminution credits when the inmate, like Mr. Fenton, has been convicted of multiple violations of the third-degree sexual offense statute against a child who is under 16 years old.

But, regardless of the minor differences in the two statutory provisions, both have the effect of increasing the amount of time a person spends in prison based solely on whether the person has been "previously convicted." Both statutes achieve the same result

16

of increasing incarceration for the subsequent conviction, and, under the rationale set forth in *Gargliano*, should be treated the same.

At the time the Maryland General Assembly adopted the restrictions CS § 3-702(c) imposed on earning diminution of confinement in 2010 Md. Laws, ch. 183, *Gargliano* had already been the law of Maryland for over fifteen years. And prior to the enactment of CS § 3-702(c), the Supreme Court of Maryland had held: "The Legislature is presumed to be aware of our prior holdings when it enacts new legislation and, where it does not express a clear intention to abrogate the holdings of those decisions, to have acquiesced in those holdings." *Allen v. State*, 402 Md. 59, 72 (2007); *see Gargliano*, 334 Md. at 436-37 (quoting *State v. Bricker*, 321 Md. 86, 93 (1990), to similar effect).

Therefore, the General Assembly is presumed to have been aware of the construction the Supreme Court had set forth in *Gargliano* relative to an enhancement of the term of incarceration for a person who had been previously convicted of a crime. And that holding was: "Where, as here, the defendant has not been convicted of an earlier offense, and thereby warned about the enhanced consequences of future criminal conduct, prior to the commission of the principal [i.e., repeated] offense, the imposition of an enhanced penalty is not warranted." *Gargliano*, 334 Md. at 445.

Applying that statutory construction to Fenton's circumstances, we conclude that CS § 3-702(c) does not prohibit Fenton from accruing any diminution of confinement credits for his sentence on count 8; he had not been "previously convicted" of the predicate offense at the time of the *commission* of the subsequent offense that was charged in count 8.

17

*Conclusion*

We will vacate the judgment of the circuit court and remand the case to that court, directing it to remand the case to the Secretary with instructions to calculate Fenton's diminution of confinement credits in accordance with this opinion.

> **JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY VACATED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE SECRETARY TO CALCULATE APPELLANT'S DIMINUTION OF CONFINEMENT CREDITS IN ACCORDANCE WITH THIS OPINION.**
>
> **COSTS TO BE PAID BY APPELLEE/CROSS-APPELLANT.**

18

The correction notice(s) for this opinion(s) can be found here:

https://www.mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0322s23cn.pdf